433 So.2d 827 (1983)
STATE of Louisiana, ex rel. Douglas JOHNSON
v.
McGOUGAN, Warden.
No. 82 KW 0799.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*828 Ossie B. Brown, Dist. Atty. by Brett Grayson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Ernest Smithling, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
By a bill of information filed on April 14, 1982, the relator herein, Douglas Johnson, was charged with committing criminal mischief on January 28, 1982, by giving a false report to an officer of the law, in violation of La.R.S. 14:59(5). On June 11, 1982, the relator was brought before the district court and advised of his right to counsel and to court-appointed counsel if indigent. The defendant waived his right to counsel, was arraigned and pled not guilty, and the case was fixed for trial on July 19, 1982. Prior to trial, the relator, in proper person, filed for a writ of habeas corpus, a motion for a continuance to hire retained counsel, and a motion to recuse the trial judge. All of these motions were denied by the trial judge prior to the commencement of the trial on July 19, 1982. The trial commenced, the state introduced its evidence and rested. The relator filed a motion to subpoena an additional witness and the trial was continued to July 22, 1982, so the witness could be served. On July 22, 1982, the witness failed to appear. The court ordered that the trial be continued until August 26, 1982, and for the subpoena to reissue. On August 26, 1982, prior to commencing the trial, the relator requested court-appointed counsel for the remainder of the trial. The court appointed an assistant public defender who was present in court to represent the accused. The defense presented its evidence and rested. The court found the accused guilty as charged and sentenced him "to pay a fine of $100.00 and court costs or in default of payment thereof to be confined in the East Baton Rouge Parish Prison for a period of one days (sic), receiving credit for time served."
On September 7, 1982, relator, in proper person, filed a motion for the trial transcript "... in order to seek Review of his Conviction and Sentence to a higher Court...". In an order dated September 8, 1982, the trial judge denied the motion for the transcript with the following language: *829 "A review of the record reveals that the sentence in the case has been served. Therefore, applicant is not entitled to a copy of these records."
In a pleading dated September 9, 1982, the relator, in proper person, applied to the district court for a writ of habeas corpus alleging that he was denied his right to a writ of review because his court-appointed counsel refused to act on his behalf and that he was denied his right to a trial transcript. The trial court denied this application. This pleading is marked received on September 16, 1982, (but not by whom) and was filed in the Clerk of Court's office on September 22, 1982.
In a pleading dated September 12, 1982, the relator, in proper person, applied to the Louisiana Supreme Court for a "Writ of Habeas Corpus". This pleading was received by the Louisiana Supreme Court on September 16, 1982. In this pleading, relator advised the court that he had been refused his right to invoke post conviction relief for the following reasons:
Immediately after sentencing Petitioner informed his Court appointed attorney Mr. Ernest Smithling that he wished to exercise the right to the Writ of Review. Mr. Smithling gave no answer to Petitioner and as of this date there has been no answer.
On or about September 1, 1982 Petitioner filed a Motion for Transcript of trial and Post Conviction documents and said motion was denied because Petitioner has served the sentence (6 months). Petitioner admits to this Honorable Court that he has indeed served the sentence but that he has not paid the $100.00 fine imposed upon him and thus he stills (sic) satisfies the Custody requirement for Post Conviction relief because he is still being held under restraint(s) of said Conviction and that he is entitled to Post Conviction relief.
Relator further contended that the trial court committed error by denying his motions to recuse and for a continuance and that the finding of guilty was contrary to the law and the evidence. On October 1, 1982, the Louisiana Supreme Court granted the application for the purpose of transferring it to this court for consideration and action.[1]
We reviewed the relator's application and noted that, in different places, he referred to habeas corpus (La.C.Cr.P. art. 351 et seq.), post conviction relief (La.C. Cr.P. art. 924 et seq.) and the writ of review (La.C.Cr.P. art. 912.1[C]). No person can be subjected to imprisonment or forfeiture of rights or property without the right of judicial review. La. Const. of 1974, art. I, § 19. The right to judicial review may be accomplished under the appellate or supervisory jurisdiction of a court. The offense of criminal mischief is a misdemeanor and a defendant charged with that offense is not entitled to a trial by jury. La.R.S. 14:59; La.C.Cr.P. art. 779. Because the relator was not entitled to a jury trial for criminal mischief, this court has no appellate jurisdiction in this case. La. Const. of 1974, art. V, § 10(A)(3). The relator only has a right of review as is provided by law. La. Const. of 1974, art. V, § 10(C). By Act 516 of 1980 (La.C.Cr.P. art. 912.1), which became effective on July 1, 1982, when this court obtained criminal jurisdiction, the relator "has the right of judicial review by application to the court of appeal for a writ of review." Further, under our appellate jurisdiction, a person is not entitled to post conviction relief if he has a right to appeal or has an appeal pending. La.C.Cr.P. art. 924.1. The person must first exhaust his appellate rights. By analogy, a party should also exhaust his right to the writ of review before he can seek post conviction relief in those types of cases. To hold otherwise would authorize multiple post conviction proceedings involving the same matters to be pending at the same time in non-jury trial cases when no such right exists in more serious cases. For these reasons, we *830 felt that the proper procedural device for the relator to assert his grievances was the writ of review provided for in La.C.Cr.P. art. 912.1(C).
Rule 4[2] of the Uniform Rules of the Courts of Appeal of the State of Louisiana is applicable to applications for supervisory writs of any kind (including the writ of review). The relator's application transferred to us by the Louisiana Supreme Court was reviewed and failed to comply with Rule 4 in the following significant respects:
(1) no affidavit verifying the allegations of the application, Rule 4-5. The purpose of this Rule is to promote justice by preventing, so far as possible, fictitious defenses. See La.R.S. 14:123 (perjury);
(2) no affidavit certifying that a copy of the application had been delivered or mailed to the respondent judge and to opposing counsel, Rule 4-5. Fundamental fairness requires that notice of the relator's complaints be served on opposing counsel so that he can properly represent his client's interests in the proceedings. Fundamental fairness also dictates that the trial judge be given an opportunity to modify or reverse an erroneous decision (if he still has jurisdiction to do so) or to defend his ruling by way of a per curiam;

(3) no copies of pertinent court minutes or the judgments, orders or rulings complained of, Rule 4-5. The purpose of this Rule is to allow the reviewing court to know accurately the procedural posture and rulings in the case. For example, in the instant case, the relator contended that he was sentenced to serve six months in the parish jail and pay a fine of $100. The minutes of the court reflect, however, that he was sentenced to pay a fine of $100 and costs, or in default thereof to serve one day in the parish jail.[3]
This court has constitutional and statutory authority for its rule-making power. La. Const. of 1974, art. V, § 12; La.C.C.P. art. 193; La.C.Cr.P. arts. 18 and 931(1). Pursuant to La. Const. of 1974, art. V, § 5(A), the Louisiana Supreme Court has the power to establish procedural and administrative rules for the judiciary that are not in conflict with law. At the Louisiana Constitutional Convention of 1973, the Chairman of the Judiciary Committee discussed the meaning of this provision as follows:

Mr. Lanier Judge Dennis, this language that it may establish procedural and administrative rules not in conflict with law, is this intended to mean that the Supreme Court could make the local court rules of each judicial district?

Mr. Dennis No, sir, it's not. The way this language came about in the committee, the present Constitution says that the Supreme Court has control of and general supervisory jurisdiction over all courts. Some of the members of the committee objected to the words, "control of," and they were taken out. Now just to be sure that that didn't completely take away the Supreme Court's right to make reasonable rules as to the administration of justice in the state about things such as how long you can take to decide a case and reporting to the Supreme Court about case loads and things of this nature which are essential to efficient management of the entire court system. Just to make sure those were not done away with by deleting the words, "control of," we put in the second sentence which clearly states that the Supreme Court can make procedural, administrative rules.

Mr. Lanier So, what we have here, this does not authorize the Supreme Court to tell each judicial district how to make its local court rules. It merely is to give the court authority to control the general administration of justice throughout the whole system.

Mr. Dennis That's correct, Mr. Lanier, and I believe that under this even if *831 something like that should be attempted, the legislature could, by its authority in this sentence, come in and write another rule and say you can't make local court rules. But it is not the intention of the.... to grant the Supreme Court that much pervasive power.
Vol. VI, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, p. 725 (August 15, 1973). By analogy, if the Louisiana Supreme Court does not have the power to make court rules for each judicial district, it also may not make court rules for the Courts of Appeal.
On October 7, 1982, pursuant to the authority of Rule 4-1, this court declined to consider the relator's application because he failed to comply with the requirements of Rule 4, but reserved to him the right to refile the application in proper form through his attorney. In Trahan v. Petroleum Casualty Company, 250 La. 949, 200 So.2d 6 (La.1967), the Louisiana Supreme Court observed that it was well-settled that rules of court have the effect of law both upon the judge and the litigants. Our research indicates that this holding has not been overruled. This legal proposition has been followed by the Courts of Appeal. Louisiana Hoop Company, Inc. v. Hood, 292 So.2d 808 (La.App. 1st Cir.1974); Boudreaux v. Yancey, 256 So.2d 340 (La.App. 1st Cir.1971); Jennings v. Coleman, 250 So.2d 845 (La.App. 4th Cir.1971).
On December 29, 1982, relator filed with the Louisiana Supreme Court an application for a writ of mandamus to direct this court to consider his application for a writ of habeas corpus upon the facts and law. Relator contended that he repeatedly wrote to his court-appointed counsel to refile his writ in this court, but his efforts were to no avail. He further contended that his failure to comply with Rule 4 of the Uniform Rules of the Courts of Appeal should not be fatal to his application and bar access to the court. This court has no record of receiving a copy of this application as required by Rule 10 of the Louisiana Supreme Court Rules and the relator's application does not have an affidavit verifying that a copy had been mailed or delivered to the respondent judge as required by that rule.[4] On March 25, 1983, the Louisiana Supreme Court, 433 So.2d 687, granted the relator's application for writ of mandamus and issued the following directive to this court:
The first circuit is directed to consider again relator's "Petition for Habeas Corpus Relief" and take appropriate action. Rule 4 in the Uniform Rules of the Courts of Appeal should not serve to deny access by a pro se applicant to the courts for postconviction relief. In State ex rel. Marullo v. Clark, 352 So.2d 223, 226 (La. 1977), we emphasized that "[t]he writ of habeas corpus [is] the primary instrument for safeguarding individual liberty against unlawful state action.... Because of its essential function, arbitrary and unnecessary requirements of form and pleading should not be allowed to obstruct its effectiveness."
As indicated by its title, "Post Conviction Proceedings," Rule 5 of the Uniform Rules, not Rule 4, is applicable "... to all proceedings for post-conviction relief filed by persons who have been convicted and imprisoned after sentence for the commission of a crime." Rule 5-1. Rule 5 contains as an appendix the Uniform Application for Post Conviction Relief. If the court of appeal requires a pro se applicant to comply with this form, it should advise him of that fact clearly. Rule 5-4(b). It should also provide him with a copy of the Uniform Application to facilitate presenting his claims in the proper form. Cf., Former Rule 27(2), Rules of the Supreme Court of Louisiana (1982); La.C.Cr.P. art. 926(D); Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. 2254. Finally, if the court of appeal returns an application for failure to comply with court rules, it should specify *832 the manner in which the application failed to comply.
We agree that court rules should not deny a party access to the courts. Court rules are designed to provide efficient and orderly access to the court. They should be designed so that the court is apprised with reasonable accuracy of the substantive issues involved and the procedural posture of the case. They should require notice to affected parties so that they might have the opportunity to present their views to the reviewing court. Fundamental fairness and judicial efficiency require nothing less. In 21 C.J.S. § 170 Courts at page 264 appears the following:

Purpose of rules. Court rules of practice are adopted to facilitate the business of the court and to promote the orderly and expeditious administration of justice and for the benefit of the parties as well as for the benefit of the court. Rules which promote the speedy determination of the rights of litigants, provided they are such as will protect the rights of persons and property, must be given judicial sanction in preference to rules based purely on technical distinctions, the effect of which is only to hinder and delay the courts in the administration of justice. (Emphasis added). (Footnotes omitted).
We have been ordered by the Louisiana Supreme Court to consider the relator's application as one for post conviction relief (La.C.Cr.P. art. 924 et seq.) governed by Rule 5 of the Uniform Rules of the Courts of Appeal, rather than as an application for a writ of review (La.C.Cr.P. art. 912.1) controlled by Rule 4. Although we might disagree with this order, we are not free to disobey it. State v. Petterway, 403 So.2d 1157, 1194 (La.1981). When considered as an application for post conviction relief, this pleading on its face fails to allege facts or law which would entitle the petitioner to such relief. Article 924 of the Louisiana Code of Criminal Procedure provides as follows:
An application for post conviction relief is a petition filed by a person in custody after sentence following conviction for the commission of an offense seeking to have the conviction and sentence set aside.

"Custody" as used in this Title means detention or confinement, or probation or parole supervision, after sentence following conviction for the commission of an offense. (Emphasis added).
Relator concedes in his application that he served his sentence, but contends that he has not paid the $100 fine imposed upon him and that this satisfies the custody requirement for post conviction relief. The court minutes indicate that the relator was sentenced to pay a fine of $100 and court costs or in default of payment to be confined in the East Baton Rouge Parish Prison for one day. The trial judge, when he denied the relator's application for a trial transcript, indicated that the record revealed the defendant had served his sentence.[5] When the defendant originally filed his application, he was incarcerated in the East Baton Rouge Parish Prison, but his application to the Louisiana Supreme Court for a writ of mandamus indicated that he was incarcerated in the Hunt Correctional Center in St. Gabriel, Louisiana.[6] Thus, the relator is not in detention or confinement as a result of his conviction for criminal mischief, nor is he on probation or under parole supervision. Accordingly, he is not "in custody" for purposes of post conviction relief on the criminal mischief charge, and his request for such is dismissed. La.C.Cr.P. art. 928; Rule 5-4, Uniform Rules, Courts of Appeal; C. Joseph, Postconviction Procedure, 41 La.L.Rev. 625, 633 (1981).
It is also apparent that the relator is not entitled to a writ of habeas corpus. Article 351 of the Louisiana Code of Criminal Procedure provides as follows:

*833 Habeas corpus is a writ commanding a person who has another in his custody to produce him before the court and to state the authority for the custody.
"Custody" as used in this Title means detention or confinement as a result of or incidental to an instituted or anticipated criminal proceeding.
The provisions of this Title are not available to persons entitled to file an application for post conviction relief under Title XXXI-A. (Footnote omitted).
Official Revision Comment (c) for Article 351 provides as follows:
The last paragraph distinguishes habeas corpus from applications for post conviction relief under Title XXXI-A. Habeas corpus is not the proper procedural device for petitioners who may file applications for post conviction relief. Essentially, habeas corpus deals with pre-conviction complaints concerning custody.
For the foregoing reasons, this application for post conviction relief fails to allege a claim which would entitle the relator to such relief and is dismissed.
APPLICATION FOR POST CONVICTION RELIEF DISMISSED.
NOTES
[1] In this pleading, the relator indicated that he was a prisoner in the East Baton Rouge Parish Prison in Scotlandville, Louisiana.
[2] Rule 4 is modeled in part after Rule 10 of the Louisiana Supreme Court Rules.
[3] This court had to order the record from the trial court to secure this information.
[4] This new application indicates that the relator was confined in the Hunt Correctional Center in St. Gabriel, Louisiana. We secured a copy of the application from the Louisiana Supreme Court after action was taken.
[5] Apparently, the trial judge determined that since the relator had served his sentence, he was not entitled to post conviction relief and, therefore, was not entitled to a transcript for use in seeking such relief. The relator would be entitled to a transcript for a writ of review.
[6] In April of 1983, this court received a letter from the relator indicating that he is now incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.